# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **TONY McKENNA,** | ) | |
| | ) | |
| Plaintiff**,** | ) | Case No. 1:22CV00002 |
| | ) | |
| **v.** | ) | **OPINION AND ORDER** |
| | ) | |
| **POLICE CHIEF, BRISTOL VA. CITY** | ) | JUDGE JAMES P. JONES |
| **POLICE DEPARTMENT, ET AL.,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

*Tony McKenna, Pro Se Plaintiff; Jim H. Guynn, Jr., and Emily K. Stubblefield, GUYNN, WADDELL, CARROLL & LOCKABY, P.C., Salem, Virginia, for Defendants Officer Joshua Greene, Officer Alexander Erickson, and Officer Charles Thomas, Jr.; Nathan H. Schnetzler, FRITH ANDERSON + PEAKE, P.C., Roanoke, Virginia, for Defendant Tim Boyer.*

In this civil action removed from state court, the pro se plaintiff asserts various claims under 42 U.S.C. § 1983 arising out of an interaction with three police officers seeking to serve an emergency protective order leading to the warrantless arrest of the plaintiff. The defendants have moved for summary judgment. For the reasons that follow, I will grant in part and deny in part the motions. In addition, I will direct certain of the defendants to show cause why summary judgment should not be granted in favor of the plaintiff, pursuant to Rule 56(f).

I.

The following facts are largely undisputed, particularly those of the police officers' encounters with the plaintiff, because they were captured by an officer's body camera and the recorded audio and video have been submitted to the court.[1]

On June 6, 2021, Officers Joshua Greene and Alexander Erickson responded to a call at the Eastridge Apartment complex in Bristol, Virginia. Misty Thomas, a tenant, informed them that her upstairs neighbor, plaintiff Tony McKenna, had been harassing her and earlier that day, he had "banged on her window, called her a whore, and was wielding what appeared to be a metal police baton." Revised Mem. Supp. Mot. Summ. J. Ex. 1, Erickson Decl. ¶ 5, ECF No. 36-1. The officers went to speak with McKenna, who was standing outside of his apartment in a breezeway. Their conversation lasted only a few minutes during which McKenna denied all of Thomas' allegations.

The officers returned to Thomas' apartment and informed her that she could seek an emergency protective order (EPO). She accompanied them to the police station and gave sworn testimony before a magistrate and an EPO was granted. *Id.*

---

[1] Counsel for the police officers had not seen the body cam footage before she filed the defendant officers' Motion for Summary Judgment and declarations of the officers in support of the motion. After obtaining a copy of the body cam footage, counsel filed a Revised Memorandum in Support of Summary Judgment, with new declarations of the three officers attached. Both sets of declarations are considered to the extent that they do not contradict each other or the explicit portions of the body camera footage.

at Ex. 5, Petition for Protective Order (PPO), ECF No. 36-5.  Thomas was unable to

provide certain information about McKenna to fully complete the PPO form, namely

that she was unsure "how to spell McKenna's name," and she did not know "his

birth date," or "his social security number."  Mem. Supp. Mot. Summ. J. Ex. 1,

Greene Decl. ¶ 9, ECF No. 26-1.

Officers Greene and Erickson, now accompanied by Officer Charles Thomas,

returned to the Eastridge Apartment complex to serve McKenna with the EPO.

Officer Thomas knocked on McKenna's door.  By that time, McKenna was no longer

standing outside of his apartment.  McKenna cracked open the door and  Officer

Thomas immediately ordered him to obtain his driver's license and to step outside

into the breezeway.  Pl.s' Resp. Opp'n Ex. 1, "First Service," at 1:08–1:09, ECF No.

27-1.[2]  McKenna refused.  The officers told McKenna that they needed to serve him

with the EPO.  *Id.* at 1:12.  They also continued ordering McKenna to get his driver's

license, and at one point said that they "need[ed] to identify [him]."  *Id.* at 2:01–02.

After a few minutes of back and forth, McKenna exited the apartment and with his

---

[2]   There were three separate encounters between McKenna and the defendant
officers: (1) the initial response to the call at Eastridge Apartment Complex; (2) the first
attempted service of the EPO; and (3) the second attempted service, the arrest, and the
search incident to arrest.  Each separate encounter was captured by the body camera.  The
footage was saved as five separate files uploaded onto the thumb drive submitted by the
plaintiff.  I cite to only three of the files — Encounter 1 "Misty," Encounter 2 "First
Service," and Encounter 3 "[A]rrest."  The other two files show the drive to the jail and
Officer Erickson's interaction with McKenna's wife at the jail, which are immaterial to the
present motions.

hand outstretched, asked the officers to "give [him] the paper." *Id.* at 2:06.  They refused.  The officers turned to leave and as they were exiting down the stairwell, told McKenna that they would be back.  McKenna waved his hand in disregard and went back inside his apartment.

The officers did not immediately leave the apartment complex.  Instead, Officer Erickson spoke on the phone with a local prosecutor, Assistant Commonwealth's Attorney Tim Boyer.  Boyer advised Officer Erickson that McKenna could be charged with obstruction of justice.  Boyer denies that he directed the officers to arrest McKenna, nor does Officer Erickson so claim.  Mem. Supp. Mot. Summ. J. Ex. A, Boyer Decl. ¶ 8, ECF No. 31-1; Erickson Decl. ¶ 11, ECF No. 36-1.[3]

The officers returned to McKenna's apartment to attempt service of the EPO a second time.

---

[3]   In his initial declaration, Erickson swore that Boyer informed him that McKenna could be charged with obstruction of  justice because all parts of the EPO needed to be filled out including "social security number and date of birth."  Mem. Supp. Mot. Summ. J. Ex. 2, Erickson Decl. ¶ 16, ECF No. 26-2.  In his revised declaration, Erickson omitted any reference to the social security number and date of birth.  Erickson Decl. ¶ 11, ECF No. 36-1.  Officer Green swore that after Erickson's phone call with Boyer, Erickson told the officers that Boyer said McKenna could be charged.  Green Decl. ¶ 16, ECF No. 26-1.  Officer Thomas stated in his declaration that after getting off the phone with Boyer, Erickson stated, "[W]e could *arrest* [McKenna] on that basis if he continued to refuse to provide his information."  Mem. Supp. Mot. Summ. J. Ex. 4, Thomas Decl. ¶ 8, ECF No. 26-4 (emphasis added).  The Incident Report, completed by Officer Greene the next day and approved by a sergeant, stated that Boyer had advised that McKenna could be charged with obstruction if he refused to provide all of the information.   *Id.* at Ex. 3, Incident Report 6, ECF No. 26-3.

As he approached McKenna's apartment, Officer Thomas removed his gun from his holster and pointed it at the ground. He then knocked on the door. McKenna partially opened the door but remained inside the apartment, standing only a few feet behind the doorway. Officer Thomas immediately ordered McKenna to step outside and beckoned him with his hand. McKenna declined. He asked if Officer Thomas had a warrant. Appearing to surmise (correctly) that there was no warrant, McKenna started to close the door. Officer Thomas lunged forward and stepped into the doorway, kicking the door and pushing it open with his shoulder. The forceful opening sent McKenna stepping back. Standing a few feet inside of McKenna's apartment, Officer Thomas placed his gun back in its holster and told McKenna he was going to be arrested for obstruction of justice. He then grabbed McKenna by the hands and pulled him out into the hallway. McKenna did not resist.

Officer Thomas immediately asked McKenna to get his "license." Pl.'s Resp. Opp'n Ex. 1, "[A]rrest" 1:05–1:07, ECF No. 26-1. McKenna refused and stated, "What makes you think I have a license." *Id.* at 1:07–1:09. The officers responded, "ID." *Id.* at 1:11. McKenna retorted that he was not required to carry a state ID. He again repeated his request to see a warrant and asked the officers "to understand peoples' rights," to which one of the officers responded, "You don't have any rights right now." *Id.* at 1:18–1:23. McKenna turned towards the officer, pointing his finger at him, stating, "Yes, I do, young man." *Id.* at 1:22–1:25. At the same time,

McKenna made it clear that he would accept service and asked — for the second time — to be handed the papers. *Id.* at 1:47. They refused, insisting that they needed McKenna's "descriptors in order for the paper to be entered." *Id.* at 1:45. When asked directly if he was "refusing to accept service," however, McKenna insisted that he was not. *Id.* at 2:05.

This back-and-forth continued a few minutes before the officers gave up, placed McKenna in handcuffs, and arrested him for obstruction. Even after he was placed in handcuffs, McKenna continued to insist that "he [would] accept service." *Id.* at 2:22–2:24. He also claims that Officer Thomas slapped his hands, but the body camera footage does not support this claim. *Id.* at 2:15–3:18. The officers then escorted McKenna from his apartment to a police vehicle. Officers Erickson and Thomas conducted a brief search of McKenna's person before seating him in the backseat. McKenna was unable to lift his right leg into the vehicle and asked several times for assistance. Only after McKenna so pleaded did Officer Erickson lift McKenna's pant leg and place him securely in the vehicle. *Id.* at 5:22–5:34. McKenna claims that in the process, Officer Erickson intentionally hit him with his shoulder and knocked him over, but there is no evidence of that based on the body camera footage. *Id.* at 5:18–5:38.

The officers transported McKenna to the local jail. After approximately 30 minutes, he provided his birthday and social security number. An officer filled out

the EPO form with this information and served McKenna.  Mots. Hr'g Pl.'s Ex. 1, EPO, ECF No. 34.  Meanwhile, Officer Greene appeared before a magistrate to request a warrant for McKenna on the obstruction of justice charge.  The magistrate refused, reasoning that the only necessary information needed to serve an EPO was the subject's name and address.  Erickson Decl. ¶ 17, ECF No. 36-1.  The police then took McKenna back to his apartment without further incident.

The plaintiff, proceeding pro se, filed suit in Virginia state court, asserting various claims under 42 U.S.C. § 1983 against Officers Thomas, Greene, and Erickson, the City of Bristol, Virginia, the Bristol Police Department, and Assistant Commonwealth's Attorney Tim Boyer.  After removing the case to federal court, the defendants jointly moved to dismiss the operative Amended Complaint for failure to state a claim, which I granted in part and denied in part.  I allowed the case to proceed as to certain Fourth Amendment claims against the three police officers and the Assistant Commonwealth's Attorney.[4]  *McKenna v. Bristol Va. City Police Dep't*, No. 1:22CV00002, 2022 WL 614031 (W.D. Va. Mar. 2, 2022).

Defendants Thomas, Greene, and Erickson has moved for summary judgment, contending that as to each of the claims, their conduct was lawful but even if this

---

[4]  The plaintiff thereafter filed a Second Amended Complaint, ECF No. 17.  The plaintiff does not raise any new allegations; rather, it appears this is a verbatim copy of the operative Amended Complaint that I considered for purposes of the defendants' Motion to Dismiss.  I therefore will consider the surviving claims as construed in my prior decision for purposes of the present motions.

court determines otherwise, they are entitled to qualified immunity. Defendant Boyer has also moved for summary judgment, asserting, among other claims, that he is immune from suit and that he did not proximately cause McKenna's arrest because he merely advised that the officers could charge McKenna with obstruction of justice.

The motions have been fully briefed and are ripe for a decision.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

At bottom, a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is

inappropriate if the evidence is sufficient for a reasonable factfinder to return a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248.  The court may also, upon giving notice and a reasonable time to response, grant summary judgment for a non-movant.  Fed. R. Civ. P. 56(f)(1).

### III.

#### A.   UNLAWFUL ENTRY AGAINST OFFICER THOMAS (COUNT FOUR).

Count Four against Officer Thomas alleges the unlawful entry of McKenna's apartment in violation of the Fourth Amendment.

"The Fourth Amendment ordinarily requires that police officers get a warrant before entering a home without permission.  But an officer may make a warrantless entry when 'the exigencies of the situation' create a compelling law enforcement need." *Lange v. California*, 141 S. Ct. 2011, 2016 (2021).[5]  "The exception enables law enforcement officers to handle emergencies — situations presenting a compelling need for official action and no time to secure a warrant." *Id.* at 2017. Such situations include to render emergency assistance and to prevent imminent harms of violence, destruction of evidence, and escape from the home.  *Id.* at 2017, 2024.  However, unlike hot pursuit of a fleeing felon, which is itself an exigent circumstance, *United States v. Santana*, 427 U.S. 38, 42–43 (1976), the "flight of a

---

[5]  I have omitted internal quotation marks, citations, and alterations throughout this opinion unless otherwise noted.

suspected misdemeanant does not always justify a warrantless entry into a home." *Lange*, 141 S. Ct. at 2024. Rather, the exigency is case-specific and an "officer must consider all the circumstances." *Id.* at 2024.

Even if there was probable cause that McKenna had committed a misdemeanor offense, the pursuit of a fleeing misdemeanant exception does not apply here because McKenna was not standing in his open doorway when Officer Thomas arrived on the scene. In other words, McKenna never fled from a public place into the home, as contemplated by the exigency exception.

In *Santana*, the Supreme Court recognized an exception to the warrant requirement exists where the police are in "hot pursuit" of a fleeing felon. *Santana*, 427 U.S. at 42–43. The police officers in that case drove to the suspect's home with probable cause to think she was dealing drugs (a felony under the state's law), and when they arrived, they observed Santana standing at the threshold of her home's open doorway. *Id.* at 40. They exited their vehicles, shouting, "Police." Santana immediately "retreated into [the house's] vestibule." *Id.* The officers followed her inside and discovered drugs. The Court upheld the warrantless entry, reasoning that the doorway was not a place where a suspect had a reasonable expectation of privacy — that is, by knowingly exposing herself to the public, she relinquished any Fourth Amendment protections. *Id.* at 42. The Court further concluded that Santana's "act of retreating into her house" could not thwart an arrest "which ha[d] been set in

motion *in a public place*." *Id.* at 42, 43 (emphasis added).  On these facts, there was also a realistic expectation that any delay would result in the destruction of evidence. *Id.* at 42–43.

But in *United States v. McCraw*, 920 F.2d 224 (1990), the Fourth Circuit distinguished *Santana* where the defendant "was not standing on the threshold of the doorway at the time [law enforcement] agents arrived," but instead, "came to the door in response to the agents' knocking." *Id* at 229.  There, the defendant "opened the door only halfway to determine who was knocking," and immediately attempted to close it. *Id.*  The officers then "forced their way inside to make the arrest." *Id.* The court held that the warrantless entry violated the defendant's Fourth Amendment rights, concluding that he "did not relinquish completely his expectation of privacy" merely by coming to the door in response to a police knock, and that "[b]y opening the door only halfway, [the suspect] did not voluntary expose himself to the public to the same extent as the arrestee in *Santana.*" *Id.*  The defendant certainly did not consent to the officers' entry into the room. *Id.*

Similarly, it is undisputed that McKenna was not outside of his apartment when the officers returned to attempt service for the second time.  Rather, he came to the door in response to Officer Thomas's knock.[6]  After cracking the door slightly

---

[6] With their initial brief, the defendants contended that when they went back for the third time, they "saw McKenna standing near the doorway of his apartment."  Mem. Supp. Mot. Summ. J. 6, ECF No. 26.  However, the body camera footage clearly shows that

open, McKenna observed Officer Thomas but told him to return with a warrant.  He

then attempted to close the door.  Under *Santana* and *McCraw*, McKenna had not

relinquished his Fourth Amendment protections at this point.  However, Officer

Thomas blocked the door from closing with his foot and shoulder and stepped across

the threshold of the doorway into the apartment.  He then grabbed McKenna by the

hands and pulled him into the hallway.

     This was a clear violation of McKenna's Fourth Amendment rights.[7]  The fact

that Officer Thomas only briefly entered the home and that he did not arrest

McKenna inside his apartment is irrelevant, as any entry of the home is protected.

In other words, the brevity of the entry does not diminish the extent of the Fourth

Amendment's protections.  The "physical entry of the home is the chief evil against

which the wording of the Fourth Amendment is directed."  *Payton v. New York*, 445

---

McKenna was inside of his apartment when they arrived and only came to the door in
response to a knock.  "[A]rrest" at 0:30-1:05, ECF No. 27-1.  The defendants' revised brief
and accompanying declarations now recount the facts consistent with the body camera
footage.  Revised Mem. Supp. Mot. Summ. J. 5–6, ECF No. 36; *Id.* at Ex. 2, Thomas Decl.
¶¶ 11–12, ECF No. 36-2.

    [7]  The warrantless entry of McKenna's home may be unlawful for a second reason.
In *New York v. Harris*, 495 U.S. 14 (1990), the Supreme Court recognized that the police
may not forcibly or coercive gain admittance into the home by obtaining the arrestee's
presence at the door. *Id.* at 17.  There, the police officers arrived at the suspect's home, and
with their guns drawn and badges displayed, knocked on the front door.  The suspect let
them enter.  *Id.* at 15.  The court concluded that the suspect had not consented to the
officers' entry and that arresting him inside the home violated the Fourth Amendment.  *Id.*
at 17.  Similarly, Officer Thomas knocked on McKenna's door with his weapon drawn,
and it could be implied that he attempted to coerce McKenna to leave the protections of his
apartment.

U.S. 573, 585 (1980).  The Fourth Amendment "draw[s] a firm line at the entrance to the house . . . [and] that threshold may not reasonably be crossed without a warrant."  *Id.* at 590.  That threshold was indisputably crossed when Officer Thomas entered McKenna's apartment without a warrant and pulled him outside for the clear purpose of arresting him.  Accordingly, I find that Officer Thomas's warrantless entry violated the Fourth Amendment.

Even if there were not circumstances sufficient to justify the warrantless entry, Officer Thomas argues that he is entitled to qualified immunity on the ground that it was not clearly established at the time that his conduct was unconstitutional.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."  *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  The qualified-immunity analysis involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right; and (2) whether that right was clearly established at the time of the violation.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The plaintiff survives summary judgment only if the court answers both questions in the affirmative.  *Estate of Armstrong ex rel. Lopez v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016).

The defendants principally rely upon two Supreme Court cases to contend that the violation of the right at issue was not clearly established.  First, in 2013, the

Supreme Court previously held that an officer was entitled to qualified immunity because it was not clearly established that the pursuit of a fleeing misdemeanant did not justify a warrantless entry. *Stanton v. Sims*, 571 U.S. 3, 10–11 (2013) (per curiam). Almost a decade later, the Court issued its decision in *Lange* that established the standard for the fleeing-misdemeanant exception on June 23, 2021, — but that was two weeks *after* McKenna's arrest. However, as explained above, *Lange* is not the relevant case. The issue is whether McKenna was in a public place when the encounter began, and under *Santana* and *McCraw*, a suspect does not relinquish his expectation of privacy or consent to the entry of his home merely by responding to a police knock and partially opening the door. The law on this point was clearly established in 1990 — well before the alleged violation in this case. Accordingly, Officer Thomas is not entitled to qualified immunity.

Accordingly, I will deny the Motion for Summary Judgment as to Count Four.

### B. Excessive Force Against Officer Thomas (Count Six).

Count Six alleges excessive use of force in violation of the Fourth Amendment against Officer Thomas. Specifically, McKenna claims that Officer Thomas slapped his hands during the course of the arrest when his hands were behind his back and he posed no threat to the officer.[8] Force is not excessive if it is objectively

---

[8] The defendants also addressed whether Officer Thomas used excessive force by drawing his weapon prior to knocking on McKenna's door. However, in my prior decision,

reasonable.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment.  *Id.*  The Fourth Circuit has also long recognized that an arrest that causes only "de minimis injuries does not constitute excessive force."  *Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017).

The taking of papers from McKenna's hands to place him in handcuffs was de minimis injury.  The video evidence does not support McKenna's assertion that Officer Thomas slapped his hands.  Accordingly, I will grant the Motion for Summary Judgment as Count Six.

## C.  Unreasonable Seizure or False Arrest Against Officers (Count Seven).

Count Seven alleges unreasonable seizure or false arrest in violation of the Fourth Amendment against Officers Thomas, Erickson, and Greene, as well as against Assistant Commonwealth's Attorney Tim Boyer.[9]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. Amend. IV.

---

I construed Count Six to allege excessive force only as to slapping of McKenna's hands, not the use of any firearm.  *McKenna v. Bristol Va. City Police Dep't*,  2022 WL 614031, at *5.   In any event, I do not find that conduct constituted excess force.

[9]   None of the three officers assert that he is less responsible for McKenna's arrest than the others and I will thus treat them all as equally responsible.

An arrest is unreasonable under the Fourth Amendment if it is not based on probable cause. *Hupp v. Cook,* 931 F.3d 307, 318 (4th Cir. 2019).

An officer may arrest an individual in a public place without a warrant if the officer has probable cause that the individual has committed, is committing, or is about to commit a crime. *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004). Where the crime is a misdemeanor, an officer can lawfully arrest the individual without a warrant only if the crime is committed in the officer's presence. *Atwater v. City of Lago Vista*, 532 U.S. 319, 354 (2001). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "[A] police officer's mistake of law can[not] support probable cause to conduct a stop when the underlying conduct was not, in fact, illegal." *United States v. Williams*, 740 F.3d 308, 312 (4th Cir. 2014). An officer's mistaken understanding of the law, however, must still be objectively unreasonable. *Heien v. North Carolina*, 574 U.S. 54, 66–67 (2014). The defendants argue that they had probable cause to believe McKenna committed obstruction of justice — a misdemeanor under Virginia law — by failing to comply with their request for his driver's license or other personal descriptors. I disagree.

An inquiry as to probable cause is based upon "two factors: the suspect's conduct as known to the officer, and the contours of the offense thought to be

committed by that conduct." *Hupp*, 931 F.3d at 318 (internal quotation marks and citation omitted).  As to the contours of the offense, this court must defer to the state's interpretation of its own criminal statutes for which the person was arrested when reviewing a § 1983 false arrest claim. *Wilson v. Kittoe*, 337 F.3d 392, 398–99 (4th Cir. 2003), *overruled on other grounds by Pearson*, 555 U.S. 223 (2009).

The defendants arrested McKenna for violating Va. Code Ann. § 18.2-460(A).  That statute provides, in relevant part, "If any person without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties," he shall be guilty of a Class 1 misdemeanor.  Va. Code Ann. § 18.2-460(A). Virginia courts have interpreted the statute narrowly. *Cromartie v. Billings*, 837 S.E.2d 247, 256 (Va. 2020).  "Merely making the officer's task more difficult but not impeding or preventing the officer from performing that task is not obstruction." *Id.* (quoting *Ruckman v. Commonwealth*, 505 S.E.2d 388, 389 (Va. Ct. App. 1998)). Nor does it "occur when a person fails to cooperate fully with an officer." *Jordan v. Commonwealth*, 643 S.E.2d 166, 171 (Va. 2007) (quoting *Ruckman*, 505 S.E.2d at 389).  "Obstruction ordinarily implies opposition or resistance by direct action." *Cromartie*, 837 S.E.2d at 256.  "The act done must be with an intention on the part of the perpetrator to obstruct the officer himself, not merely to oppose or impede the process." *Id.* (quoting *Jones v. Commonwealth*, 126 S.E. 74, 77 (Va. 1925)).

The officers' duty in this case was to serve McKenna with an EPO.  I therefore begin by considering the requirements of the relevant Virginia statutes.  The Virginia EPO statute provides, in relevant part, that "[u]pon service, the agency making service shall enter the date and time of service and other appropriate information required into the Virginia Criminal Information Network and make due return to the court."   Va. Code Ann. § 19.2-152.8(E).   The defendants argue that "other appropriate information" includes any information needed to fill out the PPO form.  They specifically point to the Returns form, which contains blank spaces for the respondent's race, sex, date of birth, weight, eye color, hair color, and social security number.  Revised Mem. Supp. Mot. Summ. J. Ex. 7, Returns, ECF No. 36-7.[10]

That statute however does not address service of process — the issue in the case.  The pertinent statute is the service of process statute which in relevant part provides:

> Any person who is subject to an emergency protective order issued pursuant  to §  16.1-253.4 or 19.2-152.8 shall  have  been  personally served with the protective order if a law-enforcement officer, as defined in § 9.1-101, *personally provides to such person a notification of the*

---

[10]   There are three official forms that are completed when a victim petitions for an EPO.  First, there is the PPO form, which is completed by the alleged victim.  PPO, ECF No. 36-5.  This form contains blanks for the respondent's description ("IF KNOWN"), including race, sex, date of birth, height, weight, eye color, hair color, social security number, and driver's license number.  *Id.*  Second, there is EPO form, which is completed by the magistrate if the petition is granted.   This form, ECF No. 34, contains the same blanks for the respondent's identifiers ("IF KNOWN") as the PPO form.  *Id.*  Third, there is the Returns form, which is completed by a law enforcement officer.  ECF No. 36-7.  This form contains the same blanks for the respondent's description except it does not provide for a driver's license number.  *Id.*

*issuance of the order*, which shall be on a form approved by the Executive Secretary of the Supreme Court of Virginia, *provided that all of the information and individual requirements of the order* are included on the form. The officer making service *shall enter or cause to be entered the date and time of service and other appropriate information* required by the Department of State Police into the Virginia Criminal Information Network and make due return to the court.

Va. Code Ann. § 16.1-264(A1) (emphasis added).

The statute requires that all information and individual requirements of the order be included on any form personally served on the respondent, i.e., the scope and conduct prohibited by the order. But nowhere does the statute impose any obligations on the respondent to provide his descriptors.

The second sentence includes the same "other appropriate information" language as the EPO statute but in this context, it is even clearer that this is a requirement for law enforcement that is separate from service itself. It explains only what an officer must do afterwards with any additional information that is collected. In other words, it imposes a data entry requirement — and even then, it only expressly mandates the date and time of service. But whether an officer complies with this data entry requirement has no bearing on whether service was effectuated, or more importantly, if the respondent obstructed or interfered with it.

Finally, interpreting the statute to require that law enforcement collect information to fill all of the blank spaces on the forms in order to effectuate proper service would not only be illogical but also it would frustrate the purposes of the

statute.  Possessing a driver's license is not required unless the person is operating a motor vehicle.  Va. Code Ann. § 46.2-300.  And a respondent may be a non-citizen and not have a social security number.  The Virginia legislature would not have intended to limit service of EPOs only to persons with driver's licenses or social security numbers.  The EPO and PPO forms reinforce this point.  While there are blank spaces for the respondent's driver's license or social security number, this information may be provided only "IF KNOWN."  PPO, ECF No. 36-5; EPO, ECF No. 34.  Additionally, the Returns form has a blank space for a social security number, but not a driver's license number.  ECF No. 36-7.

Therefore, the officers here were still able to perform their duty — serve McKenna with the EPO — without obtaining his driver's license or requiring that he provide other descriptors.  In fact, McKenna repeatedly requested that the officers hand him the protective order papers, and at one point, extended his hand and unequivocally gestured for Officer Thomas to hand him the papers.  Even after he was placed in handcuffs, he told the officers that he was *not* refusing service.  The officers were certainly free to ask for his information.  But McKenna was under no obligation to provide it.

To be sure, in some circumstances, a person may be required to show their driver's license or produce some other form of identification.  An officer may require an individual to show their driver's license if they were operating a motor vehicle.

- 20 -

Or a person may be required to confirm their identity if that is an appropriate issue. The defendants appear to argue this latter point, contending that they needed to "verify McKenna's identity."  Revised Mem. Supp. Mot. Summ. J. 20, ECF No. 36. But the facts do not indicate that they had any doubt that McKenna was the person intended to be served.  They had already spoken with him on two separate occasions earlier that day.  The victim had provided his name and location of his apartment. While she was unsure about the spelling, the officers never asked McKenna to confirm the spelling of his name.  In any event, a spelling error is unlikely to have affected the validity of service.  Tellingly, the officers never asked McKenna for his social security number — which by their own logic, would have been required to complete service.

I find that the cases principally relied on by the defendants are also distinguishable.  In *Lightfoot v. Commonwealth*, the Court of Appeals of Virginia affirmed a conviction for obstruction of justice where the suspect failed to remain in her vehicle following a traffic stop and ignored the officer's commands to return to her vehicle.  No. 0313-20-2, 2021 WL 1257140, at *5–6,  (Va. Ct. App. Apr. 6, 2021) (unpublished).  The suspect gave her driver's license to the officer but thereafter began walking towards a nearby convenient store.  *Id.* at *1.  In contrast, McKenna did not attempt to leave the scene to prevent service.  But more importantly, the officer's duties during a traffic stop are to investigate and "maintain

order and safety at the scene." *Id.* at *5.  A suspect exiting her vehicle and walking away clearly constitutes a direct action that impeded the officer from completing those duties, not merely that it became more difficult.  But here, the defendants' duties were to serve McKenna with the papers.  There was no additional duty to maintain order or to investigate that required further cooperation.  Simply put, the defendants needed only to hand McKenna the protective order to discharge their duties under the statute.

Second, in *Jones v. Commonwealth*, 334 S.E. 2d 536 (Va. 1985), the Supreme Court of Virginia upheld the arrest of a suspect for failing to identify himself in violation of a local stop-and-identify ordinance.  That ordinance required individuals in a public place to identify themselves to police officers "if the surrounding circumstances are such as to indicate to a reasonable man that the public safety requires such identification."  *Id.* at 539.  The police had probable cause to believe that the suspect was involved in a recent string of burglaries.  Here, there is no local ordinance that required McKenna to identify himself.  Nor did the police have probable cause to believe that a crime had been committed.  The only alleged offense was obstruction of justice — but there must be an independent basis or separate suspicion of criminal activity to stop and question an individual, as is made clear by *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny.  *Wingate v. Fulford*, 987 F.3d 299 (4th Cir. 2021); Mark R. Herring, Off. of the Att'y Gen. Opinion Letter on Whether

a Law Enforcement Officer May Lawfully Detain an Individual for the Purpose of Serving a Protective Order Issued Pursuant to Chapter 9.1 of Title 19.2 of the Code of Virginia (Oct. 30, 2020), 2020 WL 6544117.   And even then, the exception extends only to the suspect's name.   There simply wasn't a basis to extend the encounter beyond serving him with the papers.

Unquestionably, McKenna was less than cooperative, and his conduct may have rendered their duties more difficult, but not in relation to serving the protective order.   Without McKenna's driver's license number or other personal identifying information in the Virginia Criminal Information Network (VCIN) system, it presumably would be more difficult to enforce firearm purchase restrictions or other limits imposed on individuals with protective orders against them.   But this downstream effect does not rise to the level of impeding or preventing law enforcement from performing the particular task at issue here — service of process — as contemplated by the obstruction of justice statute.

In sum, McKenna's conduct was not illegal under Virginia law, and therefore the officers lacked probable cause to arrest him without a warrant for obstruction of justice.

However, that does not end the inquiry.   Under the two-prong test for qualified immunity, it must be shown that at the time of the violation, it was clearly established that the defendants' conduct had been deemed unlawful.   "The 'salient question' is

- 23 -

whether 'the state of the law' at the time of the asserted constitutional violation gave [the defendant] 'fair warning' that his alleged conduct was unconstitutional." *Miller v. Prince George's Cnty.,* 475 F.3d 621, 631 (4th Cir. 2007) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Although there is no Supreme Court of Virginia case that is on all fours with the facts presented here, its prior decisions nonetheless would give fair warning that no reasonable officer could have concluded that McKenna's conduct constituted obstruction of justice. That court has affirmed that a person does not commit obstruction of justice by "[m]erely making the officer's task more difficult." *Cromartie*, 837 S.E.2d at 256. Nor does a person commit obstruction by "fail[ing] to cooperate fully with an officer." *Jordan*, 643 S.E.2d at 171. In *Cromartie*, the court denied qualified immunity and held that "no reasonable officer could have concluded that [the suspect's] behavior constituted obstruction of justice." *Cromartie*, 837 S.E.2d at 256. The suspect refused to roll down her window during a traffic stop. Mere seconds passed before the officer pulled her out of her vehicle and arrested her. *Id.* at 256. The court reasoned the suspect "did not threaten" the officer or "employ direct action to resist" her arrest, and the delay was "brief." *Id.*

Likewise, the defendants' first attempt at service here lasted a few minutes and far from direct action to resist, McKenna verbally agreed and used hand gestures to indicate his willingness to accept service. The second attempt at service lasted

mere seconds before Officer Thomas pulled McKenna out of his home and told him that he was going to be arrested for obstruction. Although a back-and-forth ensued for a few minutes before he was ultimately arrested and placed in handcuffs, the officers instantaneously escalated the encounter.

Moreover, in *Jordan*, the Supreme Court of Virginia relied upon the Court of Appeals of Virginia decision in *Ruckman v. Commonwealth*, 505 S.E.2d 388 (Va. Ct. App. 1998), recognizing that its interpretation of section 18.2.460(A) was "consistent with our explanation of what constitutes obstruction of justice." 643 S.E.2d at 171. In *Ruckman*, a suspect was charged "with obstructing a law enforcement officer in the performance of his duty based upon the fact that [the officer] claimed he could not complete an accident report . . . without further information as to who was operating the truck" involved in an accident. *Ruckman*, 505 S.E.2d at 389. The suspect made inconsistent statements to law enforcement, at first claiming that he was too intoxicated to drive but then claiming he could not remember who was driving. *Id.* The court held the evidence was "insufficient to support the conviction because it failed to prove that Ruckman 'obstructed' [the officer's] investigation." *Id.* For example, the officer was able to interview other eyewitnesses to complete his investigation. *Id.*

The Supreme Court of Virginia adopted this reasoning as sound in both *Jordan* and *Cromartie*, affirming that there is a broad distinction between frustrating

behavior and the obstruction of justice. Under these precedents, then, the Supreme Court of Virginia has clearly established that providing inconsistent information is not obstruction of justice, and therefore, providing *no information* is likewise insufficient to constitute obstruction of justice. I do not believe that the defendants' conduct was objectively reasonable under either Virginia case law or in applying common sense. The "IF KNOWN" language on the EPO and PPO forms is a glaring rebuke of the defendants' claim that they were required to obtain this information.[11]

Finally, the officers' reliance on Boyer's advice that McKenna could be charged with obstruction of justice is not dispositive. Although a prosecutor's approval of charges may weigh toward immunity for the arresting officers under certain circumstances, *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000), such approval "d[oes] not mandate a grant of qualified immunity." *Merchant v. Bauer*, 677 F.3d 656, 664 (4th Cir. 2012). Rather, advice from a prosecutor must merely be taken into account in assessing an officer's reasonableness. *Id.* I find that defendant

---

[11]   Defendant Boyer argues that the relevant form for purposes of this case is the Returns form, ECF No. 36-7, which does not include the "if known" language. Def's Reply Mem. Supp. Mot. Summ. J. 1–2, ECF No. 39. Thus, a law enforcement officer would not be put on notice that the information was not required. But the Returns form is not the form that is served on the respondent by a law enforcement officer. That is the EPO form. ECF No. 34. That form does have the "if known" language. It would be odd to conclude that an officer has no knowledge of the EPO and PPO forms. Those forms also establish that the data is for VCIN entry, unrelated to proper service. Tellingly, as noted above, the officers never asked McKenna for his social security number, but they did ask repeatedly for his driver's license. The Returns form does not have a blank for a driver's license.

Boyer's advice does not, as a matter of law, overcome the unreasonableness of the officers' warrantless arrest of McKenna for obstruction of justice.

### D.  Unreasonable Seizure or False Arrest Against Prosecutor Boyer (Count Seven).

Boyer also argues that he cannot be held liable under § 1983 for false arrest in part because he is entitled to absolute immunity.  A prosecutor is entitled to absolute immunity in § 1983 when acting within the scope of his or her duties initiating and pursuing a criminal prosecution.  *Kalina v. Fletcher*, 522 U.S. 118, 124 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  Such functions include the evaluation of evidence by the police and preparation for trial and presentation to a grand jury.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

But absolute prosecutorial immunity is not available for "every litigation-inducing conduct."  *Burns v. Reed*, 500 U.S. 478, 494 (1991).  In recent years, courts have attempted to define the line between those functions that are protected by absolute immunity and those that are not — functions that are investigative or administrative and "do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings."  *Buckley*, 509 U.S. at 273.

For example, in *Burns v. Reed*, the Supreme Court held that a prosecutor was not entitled to absolute immunity for the advice he gave to police regarding the legality of an investigative technique and the existence of probable cause to arrest a petitioner.  500 U.S. at 482, 496.  Six years later, the Court found that a prosecutor's

determination that evidence was sufficient to justify a probable cause finding, as well as her preparation and filing of charging documents including a motion for an arrest warrant, were actions protected by absolute immunity. *Kalina*, 522 U.S. at 130.

The Fourth Circuit has distinguished between advice given in the instigative phase of a criminal case, which is not protected by absolute immunity, and that given during the judicial phase of a case. *Springmen v. Williams*, 122 F.3d 211, 213 (4th Cir. 1997). In *Springmen*, the conduct at issue was the prosecutor's approval of an application of statement of charges and summons, both prepared by a police officer. *Id.* at 212. The court found that the prosecutor's initiation of the prosecution — though indirectly through an instruction to the officer who signed and filed the charging document — was protected by absolute immunity. *Id.* at 213, 214. And in *Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999), the Fifth Circuit found that supplying advice to support an affidavit for an arrest warrant was entitled to absolute immunity. "Because the prosecutors were acting as advocates in supplying legal advice based on facts provided by police officers to support an affidavit for an arrest warrant, the prosecutors in the instant case are absolutely immune." *Id.* at 776.

Thus, absolute immunity turns on whether Boyer was acting as an advocate in rendering advice to Officer Erickson, or whether such advice should be characterized as investigative. I find that the advice at issue in the instant case is

more like the advice at issue in *Kalina*, *Springmen*, and *Spivey*, than that at issue in *Burns*.  Boyer, relying on facts provided by Officer Erickson, opined that McKenna *could be charged* with obstruction of justice, and in doing so, he acted as an advocate in professionally evaluating the evidence assembled by the officer defendants and in approving of a criminal prosecution.  *Compare Nero v. Mosby*, 890 F.3d 106, 119 (4th Cir. 2018) ("[The prosecutor's] assessment of the evidence . . . and her conclusion that it supported probable cause mirror the prosecutor's determination in *Kalina* that the evidence was sufficiently strong to justify a probable-cause finding . . . .  We reject the argument . . . that providing legal advice to police is never entitled to absolute immunity." (citations omitted)) *with Loupe v. O'Bannon*, 824 F.3d 534, 540 (5th Cir. 2016) (applying *Burns* and finding absolute immunity did not apply when a prosecutor's advice involved whether there was sufficient cause to arrest a suspect without a warrant).  Thus, Boyer is entitled to absolute immunity.

Moreover, Boyer did not proximately cause the seizure at issue here, McKenna's warrantless arrest.  As stated above, the evidence demonstrates that Boyer's advice involved the charges that he believed could be brought, not that the officers should arrest McKenna.[12]  It was the officer defendants' decision, not

_____

[12]  I do not find that Officer Thomas's declaration creates a genuine dispute of material fact as to this point.  He declared, "After getting off the phone, Officer Erickson told us that Mr. McKenna's refusal to provide his personal identifying information

Boyer's advice, that caused the McKenna's warrantless arrest. *Springmen*, 122 F.3d at 213 ("If, however, it was the action of Officer Rakowski and not Williams' advice that caused Springmen's prosecution, he has sued the wrong party because Williams' action could in no way be considered the proximate cause of any harm resulting from that prosecution.").

Accordingly, I will deny the officers' Motion for Summary Judgment as to Count Seven and grant Tim Boyer's Motion for Summary Judgment as to Count Seven.

### E.  UNLAWFUL SEARCH AGAINST OFFICERS ERICKSON AND THOMAS (COUNT EIGHT).

Count Eight alleges unlawful search in violation of the Fourth Amendment against Officers Erickson and Thomas.  A search incident to arrest is permitted pursuant to a lawful arrest.  *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979).  But where the arrest was unlawful, the subsequent search incident to that arrest is also unlawful.  *Blackburn v. Town of Kernersville*, No. 1:14CV560, 2016 WL 756535, at *4 (M.D.N.C. Feb. 25, 2016).  The defendants arrested McKenna without probable cause, and therefore, the search of his person by Officers Thomas and

---

constituted obstruction of justice, and we could arrest him on that basis if he continued to refuse to provide his information." Thomas Decl. ¶ 10, ECF No. 36-2. Importantly, Officer Thomas does state that Boyer told Officer Erickson that McKenna could be arrested. Furthermore, no reasonable inference can be drawn because Officer Erickson's declaration refers only to charging McKenna with obstruction of justice, as does the Incident Report, Officer Green's Declaration, and Boyer's Declaration.

Erickson incident to that arrest was also unlawful.  The law on this issue was also clearly established at the time of the violation, and therefore, the officers are not entitled to qualified immunity.  Accordingly, I deny the Motion for Summary Judgment as to Count Eight.

## IV.

As to Counts Four and Eight, and Count Seven only as to defendants Thomas, Erickson, and Greene, because there are no disputes of material fact, I am in a position to consider summary judgment for the plaintiff.  Fed. R. Civ. P. 56(f).  I will therefore direct the officer defendants to show cause why summary judgment should not be entered in favor of the plaintiff on these counts.

## V.

For the foregoing reasons, it is **ORDERED** as follows:

1. Defendants Thomas, Erickson, and Greene's Motion for Summary Judgment, ECF No. 25, is GRANTED IN PART and DENIED IN PART. The motion is denied as to Counts Four, Seven, and Eight.  Summary judgment is entered in favor of defendant Thomas as to Count Six;

2. Defendant Boyer's Motion for Summary Judgment, ECF No. 30, is GRANTED.  Judgment is entered in favor of defendant Boyer and the Clerk shall terminate him as a party to this action;

3. Defendant Boyer's Motion to Strike Plaintiff's Surreply, ECF No. 42, is terminated as moot; and

4. Defendants Thomas, Erickson, and Greene are directed to show cause within 14 days following the entry of this Opinion and Order why the court should not enter summary judgment for the plaintiff against them as to Counts Four, Seven, and Eight, a trial solely as to damages to be thereafter scheduled by the court.

ENTER:   October 26, 2022

/s/  JAMES P. JONES
Senior United States District Judge