## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **TONY McKENNA,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22CV00002 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **POLICE CHIEF, BRISTOL VA, CITY** | ) | Judge James P. Jones |
| **POLICE DEPARTMENT, ET AL.,** | ) | |
| | ) | |
| Defendant. | ) | |

*Tony McKenna, Pro Se Plaintiff; Jim H. Guynn, Jr., Guynn, Waddell, Carroll & Lockaby, P.C., Salem, Virginia, for Defendants.*

In this civil rights action pursuant to 42 U.S.C. § 1983, I directed the defendant police officers to show cause as to why the Court should not grant summary judgment sua sponte in favor of the pro se plaintiff pursuant to Rule 56(f)(1). The case arises from the warrantless entry by a police officer into the plaintiff's apartment, and from his subsequent arrest by three officers for obstruction of justice after the plaintiff refused to provide them with identifying documents. For the reasons that follow, I will enter summary judgment in favor of the plaintiff, subject to a jury trial to determine his damages.

I.

For clarity, I will restate the relevant facts from my previous Opinion and Order denying the defendants' motion for summary judgment. *McKenna v. Police Chief, Bristol VA City Police Dep't*, No. 1:22CV00002, 2022 WL 15046725 (W.D. Va. Oct. 26, 2022). These facts were determined largely from one of the officer's body camera that produced video and audio of the interactions with the plaintiff. No evidence has been presented other than that submitted and considered earlier when I denied the defendants' motion for summary judgment.[1]

On June 6, 2021, Bristol, Virginia, police officers Joshua Greene and Alexander Erickson responded to a call at the Eastridge Apartment complex. Misty Thomas, a tenant, informed them that her upstairs neighbor, plaintiff Tony McKenna, had been harassing her and that earlier that day, he had "banged on her window, called her a whore, and was wielding what appeared to be a metal police baton." Revised Mem. Supp. Summ. J. Ex. 1, Erickson Decl. ¶ 5, ECF No. 36-1. The officers spoke with McKenna, who was standing outside of his apartment in a

---

[1] The defendants' response to my order to show cause asserts qualified immunity, a ground previously presented in their motion for summary judgment and which I considered and rejected. While the law-of-case doctrine "poses no bar to the assessment of past holdings based on a different procedural posture," *Graves v. Lioi,* 930 F.3d 307, 318 (4th Cir. 2019), no new facts have been submitted in response to the order to show cause, and accordingly the facts relevant to qualified immunity remain the same as when it was first asserted.

breezeway.  Their conversation lasted only a few minutes during which McKenna denied all of Thomas's allegations.

The officers returned to Thomas's apartment and informed her that she could seek an emergency protective order (EPO).  She accompanied them to the police station and gave sworn testimony before a magistrate who granted the EPO.  *Id.* at Ex. 5, Petition for Protective Order (PPO), ECF No. 36-5.  Thomas was unable to provide certain information about McKenna to fully complete the PPO form, namely how to spell McKenna's name, and his birth date, or his social security number. Mem. Supp. Mot. Summ. J. Ex. 1, Greene Decl. ¶ 9, ECF No. 26-1.

Officers Greene and Erickson, now accompanied by Officer Charles Thomas, returned to the Eastridge Apartment complex to serve McKenna with the EPO. Officer Thomas knocked on McKenna's door.  McKenna cracked open the door and Officer Thomas immediately ordered him to obtain his driver's license and step outside into the breezeway.  Pl.s' Resp. Opp'n Ex. 1, "First Service," at 1:08–1:09, ECF No. 27-1.[2]  McKenna refused.  The officers told McKenna that they needed to

---

[2] There were three separate encounters between McKenna and the defendant officers: (1) the initial response to the call at the Eastridge Apartment complex; (2) the first attempted service of the EPO; and (3) the second attempted service, the arrest, and the search incident to arrest.  Each separate encounter was captured by the body camera.  The footage was saved as five separate files uploaded onto the thumb drive submitted by the plaintiff.  I cite to only three of the files — Encounter 1 "Misty," Encounter 2 "First Service," and Encounter 3 "[A]rrest."  The other two files show the drive to the jail and Officer Erickson's interaction with McKenna's wife at the jail, which are immaterial to the present motions.

serve him with the EPO.  *Id.* at 1:12.  They also continued to order McKenna to get his driver's license, and at one point said that they "need[ed] to identify [him]."  *Id.* at 2:01–02.  After a few minutes of back and forth, McKenna exited the apartment and with his hand outstretched, asked the officers to "give [him] the paper."  *Id.* at 2:06.  They refused.  The officers turned to leave and as they were exiting down the stairwell, told McKenna that they would be back.  McKenna waved his hand in disregard and went back inside his apartment.

The officers did not immediately leave the apartment complex.  Instead, Officer Erickson spoke on the phone with a local prosecutor, Assistant Commonwealth's Attorney Tim Boyer.  Boyer advised Officer Erickson that McKenna could be charged with obstruction of justice.  Boyer denies that he directed the officers to arrest McKenna, nor does Officer Erickson so claim.  Mem. Supp. Mot. Summ. J. Ex. A, Boyer Decl. ¶ 8, ECF No. 31-1; Erickson Decl. ¶ 11, ECF No. 36-1.[3]

---

[3]  In his initial declaration, Erickson swore that Boyer informed him that McKenna could be charged with obstruction of justice because all parts of the EPO needed to be filled out including "social security number and date of birth."  Mem. Supp. Mot. Summ. J. Ex. 2, Erickson Decl. ¶ 16, ECF No. 26-2.  In a revised declaration, Erickson omitted any reference to the social security number and date of birth.  Erickson Decl. ¶ 11, ECF No. 36-1.  Officer Green swore that after Erickson's phone call with Boyer, Erickson told the officers that Boyer said McKenna could be charged.  Green Decl. ¶ 16, ECF No. 26-1.  Officer Thomas stated in his declaration that after getting off the phone with Boyer, Erickson stated, "[W]e could *arrest* [McKenna] on that basis if he continued to refuse to provide his information."  Mem. Supp. Mot. Summ. J. Ex. 4, Thomas Decl. ¶ 8, ECF No. 26-4 (emphasis added).  The Incident Report, completed by Officer Greene the next day and approved by a sergeant, stated that Boyer had advised that McKenna could be charged

The officers returned to McKenna's apartment to attempt service of the EPO a second time.  As Officer Thomas approached McKenna's apartment, he removed his gun from his holster and pointed it at the ground.  He then knocked on the door. McKenna partially opened the door but remained inside the apartment, standing only a few feet behind the doorway.  Officer Thomas immediately ordered McKenna to step outside and beckoned him with his hand.  McKenna declined and asked if Officer Thomas had a warrant.  Appearing to surmise (correctly) that there was no warrant, McKenna started to close the door.  Officer Thomas lunged forward, kicking the door, and stepped into the doorway.  He shoved it open with his shoulder. The forceful opening sent McKenna stepping back.  Standing a few feet inside of McKenna's apartment, Officer Thomas placed his gun back in its holster and told McKenna he was going to be arrested for obstruction of justice.  He then grabbed McKenna by the hands and pulled him out into the hallway.  McKenna did not resist.

Officer Thomas immediately asked McKenna to get his "license."  Pl.'s Resp. Opp'n Ex. 1, "[A]rrest" 1:05–1:07, ECF No. 27-1.  McKenna refused and stated, "What makes you think I have a license."  *Id.* at 1:07–1:09.  The officers responded, "ID."  *Id.* at 1:11. McKenna retorted that he was not required to carry an ID.  He again repeated his request to see a warrant and asked the officers "to understand

---

with obstruction if he refused to provide all the information.  *Id*. at Ex. 3, Incident Report 6, ECF No. 26-3.

peoples' rights," to which one of the officers responded, "You don't have any rights right now." *Id.* at 1:18–1:23. McKenna turned towards the officer, pointing his finger at him, stating, "Yes, I do, young man." *Id.* at 1:22–1:25. McKenna then made it clear that he would accept service and asked — for the second time — to be handed the papers. *Id.* at 1:47. They refused, insisting that they needed McKenna's "descriptors in order for the paper to be entered." *Id.* at 1:45. When asked directly if he was "refusing to accept service," however, McKenna insisted that he was not. *Id.* at 2:05.

This back-and-forth continued a few minutes before the officers gave up, placed McKenna in handcuffs, and arrested him for obstruction. Even after he was placed in handcuffs, McKenna continued to insist that "he [would] accept service." *Id.* at 2:22–2:24. He also claims that Officer Thomas slapped his hands, but the body camera footage does not support this claim. *Id.* at 2:15–3:18. The officers then escorted McKenna from his apartment to a police vehicle. Officers Erickson and Thomas conducted a brief search of McKenna's person before seating him in the backseat. McKenna was unable to lift his right leg into the vehicle and asked several times for assistance. Only then did Officer Erickson lift McKenna's pant leg and place him securely in the vehicle. *Id.* at 5:22–5:34. McKenna claims that in the process, Officer Erickson intentionally hit him with his shoulder and knocked him

over, but there is no evidence of that based on the body camera footage. *Id.* at 5:18–5:38.

The officers transported McKenna to the local jail.  After approximately 30 minutes, he provided his birthday and social security number.  An officer filled out the EPO form with this information and served McKenna.  Mots. Hr'g Pl.'s Ex. 1, EPO, ECF No. 34.  Meanwhile, Officer Greene appeared before a magistrate to request a warrant for McKenna on the obstruction of justice charge.  The magistrate refused, reasoning that the only necessary information needed to serve an EPO was the subject's name and address.  Erickson Decl. ¶ 17, ECF No. 36-1.  The police then took McKenna back to his apartment without further incident.

## II.

Summary judgment is appropriate, if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017) (internal quotation marks and citation omitted). "District courts have an inherent power to grant summary judgment *sua sponte* so long as the party against whom summary judgment is entered has notice sufficient to provide [the losing party] with an adequate opportunity to demonstrate a genuine

issue of material fact." *Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323 (4th Cir. 2006) (internal quotation marks, alteration, and citation omitted).

## III.

### A.  UNLAWFUL ENTRY AGAINST
### OFFICER THOMAS (COUNT FOUR).

In Count Four McKenna alleges that Officer Thomas unlawfully entered his apartment.  The Fourth Amendment protects individuals from unreasonable searches and seizures.  U.S. Const. amend. IV.  I earlier found that Officer Thomas violated the Fourth Amendment by entering McKenna's apartment without a warrant and that the doctrine of qualified immunity did not apply because the law was clearly established at the time of the violation.  *McKenna*, 2022 WL 15046725 at *5–6.

Officer Thomas responds by arguing that qualified immunity should apply here because he reasonably believed exigent circumstances existed that justified the warrantlessly entry.  Specifically, he claims that he reasonably believed McKenna posed a threat to the officers' safety and that a jury should judge whether Officer Thomas's suspicion that McKenna was violent was reasonable.  According to Officer Thomas, if the jury finds his belief reasonable, then qualified immunity applies here, and the suit as to Count Four must be dismissed.

When determining if qualified immunity applies, a court asks two questions: (1) whether the plaintiff has alleged a violation of a federal right and (2) whether the

right at issue was clearly established at the time of the alleged violation. *Burns-Fisher v. Romero-Lehrer*, 57 F.4th 421, 424 (4th Cir. 2023).

My initial inquiry is whether the facts, taken in the light most favorable to Officer Thomas, show that he violated a constitutional right. The Supreme Court has instructed that warrantless home intrusions and arrests are deemed presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). Officer Thomas does not argue that he did not violate McKenna's rights under the Fourth Amendment. Instead, he submits that the doctrine of qualified immunity protects him from suit because he reasonably believed exigent circumstances, an exception to the warrant requirement, necessitated the warrantless entry.

When deciding whether to grant summary judgment in actions raising claims of Fourth Amendment violations for warrantless searches and seizures, I must decide if the officers' beliefs were "objectively reasonable in light of the facts and circumstances confronting them," notwithstanding their subjective intent. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (internal quotation marks and citation omitted) ("At the summary judgment stage, . . . , the question of whether the officer's actions were reasonable is a question of pure law."). In *Anderson v. Creighton*, 483 U.S. 635, 641 (1987), the Supreme Court reaffirmed that a defendant is entitled to summary judgment if a defendant officer can establish, "as a matter of law," that he reasonably believed the search was lawful. In *Osabutey v. Welch*, 857 F.2d 220,

223–224 (4th Cir. 1988), the Fourth Circuit approved summary judgment in favor of defendant officers after concluding the officers reasonably believed they had probable cause to arrest defendants and to search their car.

Qualified immunity ensures that law enforcement officers are liable for violating bright-line rules rather than for making "bad guesses in gray areas." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Officer Thomas argues that an objectively reasonable police officer would have believed that the exception applied because McKenna was reportedly violent and may have possessed a weapon, and thus posed a risk of harm to the officers, justifying a warrantless entry and seizure.

Exigent circumstances can justify an officer's warrantless entry into someone's home to handle an emergency that requires immediate official action or to prevent imminent violence. *Lange v. California*, 141 S. Ct. 2011, 2017 (2021).

"Exigent circumstances vary from case to case, and a determination of the issue is of necessity fact-specific." *Osabutey*, 857 F.2d at 224. To determine whether it was reasonable to believe that an exigency existed when Officer Thomas entered McKenna's home and seized him, I must determine if the circumstances would have created an "objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within." *United States v. Moss*, 963 F.2d 673, 678 (4th Cir. 1992).

Based on information Officer Thomas received from McKenna's neighbor, who had called the police to complain about McKenna, Officer Thomas asserts he had suspected that Mckenna could be a threat to officer safety. However, he admits that his two previous interactions with McKenna on the day of the arrest did not support that belief. Defs.' Mem. Opp'n 2–3, ECF No. 48. Officer Thomas concedes that McKenna "did not exhibit violent tendencies." *Id.* at 3. He approached McKenna's door with his weapon drawn and then knocked. McKenna partially opened the door. Officer Thomas ordered McKenna to come out of his home. McKenna refused. The Supreme Court confirmed in 2011 that "even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time." *Kentucky*, 563 U.S. at 470. Immediately before Officer Thomas decided to enter the apartment, McKenna had simply refused to answer their questions, but had offered to accept the EPO. He had asked about a warrant, and then attempted to shut the apartment door when Officer Thomas failed to produce a warrant. Attempting to shut the door demonstrated McKenna's unequivocal attempt to disengage from the interaction with the police and to exercise his right of privacy in his home. He was not physically combative or verbally threatening. He had never displayed a gun or talked about one. McKenna's behavior did not create an emergency.

Officer Thomas escalated the interaction by kicking the door to keep it from closing, using his shoulder to push the door open, and then charging into the apartment with a gun in his hand.  Once inside, Officer Thomas put his gun back in its holster, grabbed McKenna and pulled him into the hallway without resistance from McKenna.  Officer Thomas demanded McKenna answer questions about his personally identifying information so the officers could complete the paperwork for the EPO.  When McKenna stated he knew his rights, Officer Thomas exclaimed, "You don't have any rights right now."  Pl.'s Resp. Opp'n Ex. 1, "[A]rrest" 1:18–1:23, ECF No. 27-1.  A reasonably objective police officer would not have believed McKenna had no rights and would not have believed exigent circumstances existed.

Officer Thomas contravened clearly established constitutional principles under the Fourth Amendment when he entered McKenna's home without a warrant.  An objectively reasonable officer would have understood that Officer Thomas's actions violated those rights.  Accordingly, Officer Thomas is not entitled to qualified immunity.

### B. UNREASONABLE SEIZURE OR FALSE ARREST AGAINST OFFICERS (COUNT SEVEN).

Count Seven alleges unreasonable seizure or false arrest in violation of the Fourth Amendment against Officers Thomas, Erickson, and Greene.[4]  An arrest is

---

[4]  None of the three officers assert that he is less responsible for McKenna's arrest than the others and I will thus treat them all as equally responsible.

unreasonable under the Fourth Amendment if it is not based on probable cause. *Hupp v. Cook,* 931 F.3d 307, 318 (4th Cir. 2019). I previously found that the officers lacked probable cause to arrest McKenna without a warrant, that the doctrine of qualified immunity did not apply, and that reliance on the prosecutor's advice that the officers could charge McKenna with obstruction of justice, did not, as a matter of law, overcome the unreasonableness of the officers' actions. *McKenna*, 2022 WL 15046725 at *10.

The officers assert, as they have before, that their reliance on the advice of counsel constitutes an extraordinary circumstance that brings their conduct within the exception to the rule that the doctrine of qualified immunity cannot shield officials from liability when they violate clearly established law. They argue that their conduct was thus objectively reasonable.

When the contours of the law are clearly established, the qualified immunity defense "ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982). However, the Supreme Court allowed for an exception to the rule where defendant officials claimed extraordinary circumstances existed, and they did not know nor should have known of the relevant legal standard. *Id.* "Thus, the defendant officer bears the burden of proving the existence of extraordinary circumstances." *Buonocore v. Harris*, 134 F.3d 245, 252 (4th Cir. 1988). The

officer also bears the burden of proving he did not know nor should have known the applicable legal rule. *Harlow*, 457 U.S. at 819.

The defendants look to *V-1 Oil Co. v. Wyoming*, 902 F.2d. 1482, 1488–89 (10th Cir. 1990), for the proposition that reliance on the advice of counsel is often treated as an extraordinary circumstance. I disagree. The Fourth Circuit has said, "It is hardly unusual, let alone extraordinary, for public officers to seek legal advice." *Buonocore*, 134 F.3d at 252. Although a factor for consideration, the fact that Officer Erickson sought legal advice, in and of itself, is not extraordinary, nor is it dispositive. *Id*. at 253.

Even if I considered the reliance on the advice of counsel to be a solitary means to invoke the exception, an examination of other relevant factors concerning the advice would defeat its application. For instance, the Fourth Circuit has asked "when such advice was given[,] and the degree of mature consideration accorded the matter by the [attorney]" who provided the advice. *Tanner v. Hardy*, 764 F.2d 1024, 1027 (4th Cir. 1985). The officers point to the factors considered by the Tenth Circuit in *V-1 Oil Co*. v. *Wyoming*, and by another court in this district when evaluating reliance on the advice of counsel. Those factors include whether the advice was unequivocal and specifically tailored to the particular facts giving rise to the controversy, whether the officials provided complete information to the advising attorney, "the prominence and competence of the attorney(s)," and "how soon after

-14-

the advice was received the disputed action was taken." *Epperson v. Payne*, No. 4:16-cv-00050, 2017 WL 1194715 at *8 (W.D. Va. Mar. 30, 2017) (quoting *V-1 Oil Co.*, 902 F.2d at 1489).

In *Epperson*, deputies entered a home that had been recently purchased at a foreclosure auction to remove the tenants that had been living there under a lease agreement. 2017 WL 1194715 at *2. The deputies lacked a court order or a warrant. Once inside the property, the deputies, at gunpoint, handcuffed the tenant and escorted him and his son out of the home. The tenants sued for damages, alleging the officers violated, among other rights, their right to due process. The deputies moved to dismiss, raising the doctrine of qualified immunity as a bar to the suit. *Id.* at *7-8. At that early juncture in the proceedings, I found it was inappropriate to consider the advice of counsel defense. *Id.* at *8. However, I noted that the court would want "to know what information was given to the attorney and what advice was rendered in return. It cannot be sufficient to say, 'I spoke with an attorney, therefore I am protected.'" *Id.*

Accepting the officers' version of events as true, the reliance on the advice of counsel will not allow them to invoke the exception. The evidence does not reveal what Officer Erickson told prosecutor Boyer, how long Boyer took to consider the information, or whether the advice was unequivocal. He does not claim that Boyer told them they could conduct a warrantless arrest. Boyer's advice that McKenna

could be charged with obstruction of justice is not determinative.  The advice must merely be considered in assessing the officers' reasonableness.  *Merchant v. Bauer*, 677 F.3d 656, 664 (4th Cir. 2012).  Why did the officers not seek a warrant for McKenna from the magistrate before they arrested him?  Again, they had no indication that he was about to flee or even that he would leave his apartment before they could obtain a warrant.  They were the aggressors in their interactions with McKenna at his apartment, not McKenna.   I find that Boyer's advice alone did not create an extraordinary circumstance that would call for the application of the exception.

### C. Unlawful Search Against Officers Erickson and Thomas (Count Eight).

Count Eight alleges unlawful search in violation of the Fourth Amendment against Officers Erickson and Thomas.  Earlier I found that the officers arrested McKenna without probable cause and that the subsequent search of his person by Officers Thomas and Erickson incident to that arrest was also unlawful. Because the law was clearly established at the time of the violation, I found that the officers were not entitled to qualified immunity and denied the defendants' Motion for Summary Judgment as to Count Eight.  *McKenna*, 2022 WL 15046725 at *12.

The officers respond by again asserting that they reasonably believed that it was incumbent upon them, as a statutory duty, to obtain McKenna's personal descriptors.  They argue against entering summary judgment in favor of McKenna

because a jury could find that there was probable cause to believe that McKenna's conduct obstructed justice. I am still persuaded there is no genuine issue of material fact regarding the lack of probable cause for the search that followed the unlawful arrest search in the face of a clearly established constitutional right.

IV.

For the reasons stated, judgment is GRANTED in favor of the plaintiff as to Counts Four, Seven and Eight, subject to a jury determination of the plaintiff's damages. The plaintiff's recent pro se motions, Nos. 49 and 50, are DENIED as moot. The Clerk shall schedule a jury trial as soon as reasonably convenient.

It is so **ORDERED**.

ENTER:  April 18, 2023

/s/  JAMES P. JONES
Senior United States District Judge